983 F.2d 1058
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Cornell Augustus MCKENZIE, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Marlon Bramwell, a/k/a May Day, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Kakuga WATERS, a/k/a Cougar, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Kenneth FORD, a/k/a K-9, Defendant-Appellant.
 Nos. 92-5254, 92-5255, 92-5256, 92-5257.
 United States Court of Appeals,
Fourth Circuit.
 Argued: December 2, 1992
Decided: January 13, 1993
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CR-91-429-A)
 ARGUED: Suzanne Little, Alexandria, Virginia; Denise Jakabcin Tassi, Alexandria, Virginia; James MacGregor Collins, Alexandria, Virginia, for Appellants.
 Donald Campbell Lockhart, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 ON BRIEF: George Preston Doss, Jr., Alexandria, Virginia; Glenn Allen Trimper, Alexandria, Virginia, for Appellants.
 Richard Cullen, United States Attorney, Robert Clifford Chesnut, United States Attorney's Office, Alexandria, Virginia, for Appellee.
 E.D.Va.
 Affirmed.
 Before RUSSELL and LUTTIG, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Cornell McKenzie, Marlon Bramwell, Kakuga Waters and Kenneth Ford appeal from their convictions for conspiracy to distribute crack cocaine. We find their arguments unpersuasive, and affirm.
 
 I.
 
 2
 On October 31, 1991, a grand jury returned an indictment charging the appellants with six counts involving a crack distribution conspiracy. McKenzie, the leader of the drug operation, was charged with all six counts: (1) conspiracy to distribute crack cocaine; (2) operating a continuing criminal enterprise; (3) possession of a firearm by a convicted felon; (4) two counts of possession with intent to distribute crack cocaine; and (5) money laundering.[1] Bramwell, Waters and Ford were charged with conspiracy to distribute crack cocaine.
 
 
 3
 Before trial, McKenzie and Bramwell elected bench trial, and Waters and Ford elected trial by jury. The joint trial commenced on February 3, 1992, and ended the next day.
 
 
 4
 At trial, the United States produced nineteen witnesses who testified against the four appellants. The substance of the testimony indicated that McKenzie was operating a drug distribution network in Washington, D.C.,[2] with supplies being brought in by courier from Miami, Florida. The government's evidence implicated Bramwell, Waters, and Ford as members of the network, an extensive conspiracy to distribute crack cocaine.
 
 
 5
 On February 4, 1992, Judge Albert Bryan, Jr. found McKenzie and Bramwell guilty, and the jury returned guilty verdicts against Waters and Ford the next day. All four appellants received sentences of life imprisonment.[3] All four appellants appeal their convictions.
 
 II.
 
 6
 McKenzie argues that the district court erred in denying his motion to suppress evidence obtained as a result of four different search warrants.4 Specifically, McKenzie contends that the affidavits supporting the issuance of the search warrants were lacking in indicia of probable cause and contained misleading information, and that the warrants were facially deficient. This Court must give great deference to a magistrate's probable cause determination. Illinois v. Gates, 462 U.S. 213, 236 (1983); United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990); see Massachusetts v. Upton, 466 U.S. 727, 728 (1984) (per curiam) (stating that "the task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant").
 
 
 7
 McKenzie's major points of contention with the affidavits in this case include: (1) that the affidavits failed to specifically describe the criminal activities involved; (2) that the information provided by a confidential informant was stale; (3) that the informant's information was not corroborated or substantiated as trustworthy; (4) that the affidavits failed to give exact dates concerning the time of the criminal activity; and (5) that factual allegations in the affidavits were conclusory in nature. According to McKenzie, these alleged errors require suppression of the fruits of the searches.[5]
 
 
 8
 On their face, the affidavits appear to present sufficient facts to give a magistrate, under the totality of the circumstances, probable cause to issue search warrants for the premises in question. The affiant related facts from four confidential informants concerning transactions relating to the four locations searched. Therefore, it appears that the magistrate properly granted the requests for search warrants.
 
 
 9
 Even if our conclusion that probable cause appears to be present in this case could be considered open to claim of error, the searches in question fall within the good-faith exception established by the Supreme Court in United States v. Leon, 468 U.S. 897 (1984).[6] The Court held in Leon that "physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate ... [is] admissible in the prosecution's case in chief." Id. at 913. In this case Officer Forshey, the affiant, submitted a detailed probable cause statement in his affidavit, and accordingly relied on the issuance of the warrant to make his searches. Because the affidavit set forth sufficient facts to support a probable cause determination, and because McKenzie failed to produce any evidence of bad faith, we conclude that Forshey's reliance on the warrant was in good faith under Leon.
 
 
 10
 With respect to Leon 's exceptions, McKenzie fails to bring his case within any of the recognized exceptions. First, as discussed above, it does not appear that these affidavits meet the test set forth in Brown v. Illinois, 422 U.S. 590, 610-11 (1975), requiring suppression of warrants based on affidavits "so lacking in probable cause as to render official belief in its existence entirely unreasonable."[7] Leon, 468 U.S. at 923. Second, it does not appear on the record that the magistrate "wholly abandoned his judicial role in the manner condemned in LoJi Sales, Inc. v. New York, 442 U.S. 319 (1979)." Leon, 468 U.S. at 923. Third, as discussed above, the warrant does not appear to be facially invalid. Id. Fourth, and finally, McKenzie presented no evidence that the affiant deliberately misled the magistrate with "information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." Id. (citing Franks v. Delaware, 438 U.S. 154 (1978)). Therefore, we affirm the district court's denial of McKenzie's motion to suppress.
 
 III.
 A.
 
 11
 Bramwell argues that the district court erred in admitting a witness' statement that Bramwell was a drug dealer. Specifically, Bramwell objects to the testimony of the government's first witness, Latrabia Martin. In response to the government's question"What did [Bramwell] do for a living?" Martin responded "He was a drug dealer." Bramwell's objection rests on Fed. R. Evid. 403. We will reverse a district court's Rule 403 ruling only for a clear abuse of discretion. United States v. Simpson, 910 F.2d 154, 157 (4th Cir. 1990). In reviewing this ruling, we are mindful that, under Rule 403, the admission of evidence causes unfair prejudice when it may lead the jury "to make a decision on the basis of a factor unrelated to the issues properly before it." Mullen v. Princess Anne Volunteer Fire Co., 853 F.2d 1130, 1134 (4th Cir. 1988).
 
 
 12
 Bramwell's argument on this issue is without merit. There is hardly a more relevant question in a drug conspiracy case than whether the defendant is a drug dealer. The witness in question, in later portions of her testimony, testified to incidents with Bramwell that led her to that conclusion, including her observation of Bramwell and McKenzie cooking cocaine into crack. Therefore, we conclude that the district court did not abuse its discretion in admitting this statement.
 
 B.
 
 13
 Bramwell also argues that the district court erred in allowing into evidence statements made by Richard Bartholomew concerning a conversation between Bartholomew and his wife, Grace Carrion, concerning Bramwell. The statement testified to in question was made by Carrion. During Bartholomew's testimony, he stated that "[s]he called me and said that May Day, Marlon [Bramwell], was right there, and he was asking her to bring some drugs up like that." Bramwell objected to this testimony on the grounds that the wife was not charged as a co-conspirator. (J.A. at 471) On appeal, Bramwell argues that Carrion was not a co-conspirator and therefore not within the coconspirator exception to the hearsay rule, Fed. R. Evid. 801(d)(2)(E). We review admission of co-conspirator statements for abuse of discretion. United States v. Blevins, 960 F.2d 1252, 1255 (4th Cir. 1992).
 
 
 14
 From the context of the conversation testified to and in light of additional evidence indicating Carrion's involvement in the conspiracy, it appears that it was not an abuse of discretion for the district court to admit the hearsay statement. For Fed. R. Evid. 801(d)(2)(E) to apply, "a court must conclude (1) that there was a conspiracy involving the declarant and the party against whom admission of the evidence is sought and (2) that the statements at issue were made during the course of and in furtherance of that conspiracy." Blevins, 960 F.2d at 1255 (citing Bourjaily v. United States, 483 U.S. 171, 175 (1987)). The government presented overwhelming evidence of a conspiracy between Bartholomew and Bramwell, and accordingly, only Carrion's involvement in that conspiracy must be shown.
 
 
 15
 Carrion's involvement may be established if she"knew of the conspiracy's purpose" and took "some action indicating [her] participation." United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied, 112 S. Ct. 3051 (1992). "Once it has been shown that a conspiracy exists, the evidence need only establish a slight connection between the defendant and the conspiracy to support conviction." Id. Here, Carrion was well aware of the conspiracy, as her statements show, and it appears as well that she was a direct part of the conspiracy. Mr. Bartholomew testified that he wired his wife drug money, and at the time the statement in question was made, Bramwell had asked Carrion to transport drugs for him.
 
 
 16
 With respect to the second prong of the Rule 801 test, that the statements at issue were made during the course of and in furtherance of that conspiracy, it appears from the conversation in question that Bramwell was attempting to recruit Carrion to further the conspiracy. Such activity is certainly within the scope of the conspiracy and in furtherance thereof. Accordingly, the district court did not abuse its discretion in admitting the Bartholomew's statement.
 
 IV.
 A.
 
 17
 Waters argues that the district court erred in admitting the testimony of Detective William Davis concerning Waters' cocaine conviction. Waters challenges this ruling under Fed. R. Evid. 403, and we review for abuse of discretion. Simpson, 910 F.2d at 157.
 
 
 18
 As with Bramwell's argument concerning unfair prejudice, it does not appear that the district court abused its discretion. The United States argues that the "fact that Waters was found in possession of crack cocaine in the same time period as the crack cocaine conspiracy being tried, and near the same location in Washington, D.C. where he and his fellow conspirators met regularly to sell crack cocaine ... was exceptionally probative."[8] We agree, and therefore find that the district court did not abuse its discretion in admitting this testimony.
 
 B.
 
 19
 Waters also argues that there was insufficient evidence to convict him of conspiracy. Waters' sole argument on this point is that the testimony of two government witnesses, Paul Randall Brooks and William Bain, was not credible because of their cocaine habits. Both Brooks and Bain testified as to Waters' involvement in the conspiracy. This Court, however, must give "due regard" to the credibility determinations of the jury. Fed. R. Civ. Pro. 52; see United States v. Sheffer, 896 F.2d 842, 847 (4th Cir.) (stating that "it is the factfinder's, and not the judge's, responsibility to assess the credibility of witnesses"), cert. denied, 111 S. Ct. 432 (1990). Therefore, we affirm Waters' conviction.
 
 V.
 
 20
 Ford argues that there was insufficient evidence to convict him of conspiracy. Ford's argument is substantially the same as Waters', and accordingly should be rejected on the same grounds. Both Brooks and Bain testified as to Ford's involvement in the conspiracy. Therefore, we affirm Ford's conviction as well.
 
 VI.
 
 21
 Because we find each of the appellant's arguments to be without merit, we affirm their convictions.
 
 AFFIRMED
 
 
 [1]
 The district court dismissed this final count
 
 
 [2]
 The testimony also indicated that the network also extended into Maryland and Virginia
 
 
 [3]
 The district court reduced Waters' sentence to 360 months pursuant to an unopposed motion by counsel
 
 
 [4]
 McKenzie also raises this issue in his supplemental pro se brief. Despite McKenzie's admonition to "[b]e careful in your perusal in this area," Supp. Brief of Appellants at 21 n.* *, an examination of the affidavits and the record does not appear to contradict our conclusion that Leon would save the warrants even if they were defective under Gates, which they do not appear to be
 
 
 [5]
 As a preliminary matter, McKenzie may not even have standing to challenge the fourth search warrant because the premises were owned by another individual. See United States v. Hawkins, 788 F.2d 200, 203 (4th Cir.) (finding that defendant lacked standing to challenge admissibility of evidence seized from another's residence), cert. denied, 479 U.S. 850 (1986)
 
 
 [6]
 We have previously suggested that if the Fourth Amendment issue is not novel, "a determination that probable cause is lacking is not always necessary before addressing the good faith exception under Leon." United States v. Edwards, 798 F.2d 686, 690 n.2 (4th Cir. 1986). We conclude in this case, nevertheless, that probable cause was not lacking and that, in any event, Leon saves the fruits of these searches from suppression
 
 
 [7]
 McKenzie also alleges that the"magistrate was 'misled by information in an affidavit that the affiant knew was false or should have known was false except for his reckless disregard for the truth." Brief of Appellant at 19. No concrete facts supporting this allegation, however, appear in the brief. In his pro se brief, McKenzie repeats these allegations. The inconsistencies he raises, however, appear to be conjecture and not fact
 
 
 [8]
 On appeal Waters argues for the first time that the testimony was inadmissible under Fed. R. Evid. 404(b). It appears, however, that even if this Court were to review the testimony for error under that rule, the testimony sufficiently related to the conspiracy itself to escape Rule 404(b)'s prohibition. See, e.g., United States v. Soria, 965 F.2d 436, 442 (7th Cir. 1992) (Rule 404(b) is not applicable when the evidence is related to the charged offense)